IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ISIE BRINDLEY,                  )
                                )
            Plaintiff,          )
                                )
    v.                          )    No. 10 C 6933
                                )
TARGET CORPORATION,             )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

Isie Brindley ("Brindley") has sued Target Corporation ("Target"), asserting federal claims under the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§621-624) and annexing claims under the Illinois Human Rights Act ("IHRA," 775 ILCS 5/2-101 to 2-104) pursuant to the supplemental jurisdiction provisions of 29 U.S.C. §1367(a). This opinion addresses Target's partial motion to dismiss Brindley's Complaint under the auspices of Fed. R. Civ. P. ("Rule") 12(b)(6).[1] For the reasons set forth below, Target's motion to dismiss is denied as to Brindley's federal claims but granted as to her state law claims.

### Rule 12(b)(6) Standard

Under Rule 12(b)(6) a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) did away with the formulation first announced in Conley v.

---

[1] On November 24, 2010 this Court orally denied Target's contemporaneously submitted motion to strike (Dkt. 17).

Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As Twombly, 550 U.S. at 562-63 put it:

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

Twombly, id. at 570 held instead that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right to relief above the speculative level" (id. at 555).

But almost immediately thereafter the Supreme Court issued another opinion that seemed to cabin Twombly somewhat. Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) has explained that further development:

> Two weeks later the Court clarified that Twombly did not signal a switch to fact-pleading in the federal courts. See Erickson v. Pardus, [551 U.S. 89]. To the contrary, Erickson reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the... claim is and the grounds upon which it rests'" (id. at xxxx), quoting Twombly, [551 U.S. at 93]. Taking Erickson and Twombly together, we understand the Court

2

> to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.

It is on those terms that the familiar Rule 12(b)(6) principles still require the district court to accept as true all of plaintiff's well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)).[2]

### Factual Background[3]

Brindley was hired to work as a Softlines Team Lead at Target's West Dundee, Illinois store on February 13, 2007 (¶¶10-11). Brindley decided to accept the job because she was told that she would be trained and promoted to Executive Team Lead ("ETL") within a year (id. ¶¶12-13).

Brindley's problems began as soon as she started her job. Both her co-workers and her immediate supervisors treated her hostilely, refused to train her, fostered insubordination among her subordinates and made it difficult for her to perform her job functions (¶¶14-21). Brindley complained to the store manager and human resources representative, but they refused to address the situation directly, and her problems with her co-workers

---

[2] This opinion identifies Target's original supporting memorandum as "T. Mem.," Brindley's responsive memorandum as "B. Mem." and Target's reply memorandum as "T. R. Mem."

[3] Citations to the Complaint will simply take the form "¶--."

continued (¶¶22-30). On top of those underlying issues, Brindley was faulted for problems in her performance that resulted directly from the actions of her co-workers (¶¶31-38), was undermined in making her supervisory decisions (¶¶41-48), was given the demeaning position of "Restroom Captain" (¶¶50-54) and was required to perform the work of three employees who quit their jobs (¶¶55-57).

Brindley wanted to apply for two different ETL openings in 2009 and 2010 but was discouraged from doing so, and in one case she was not even given the opportunity to apply (¶¶75-84). Throughout her time at the store in 2009 and 2010 Brindley was denied mentorship and leadership opportunities offered to younger employees, and her complaints about harassment from younger members of the management team fell on deaf ears (¶¶88-89).

On April 24, 2010 Brindley resigned because she could no longer accept her situation at the store (¶101). On August 12 of that year Brindley filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting that she was the victim of both age discrimination and retaliation (T. Mem. Ex. A).[4] As usual, the charge was cross-filed with the Illinois Department of Human Rights (¶101). EEOC issued her a right-to-sue letter on August 16, 2010 (id.).

---

[4] Brindley mistakenly dates that filing on July 28 rather than August 12 (¶119).

**Timeliness Issues**

Target first argues that Brindley is barred from asserting any employment discrimination claim based on events that occurred more than 300 days before she filed her EEOC charge--that is, before October 15, 2009 (T. Mem. 5-6). Although B. Mem. 7 responds by pointing to the distinction in that respect between hostile work environment claims and claims of discrimination manifested by discrete acts (see Nat'l R.R. Passenger Corp. v. Morgan ["Amtrak"], 536 U.S. 101 (2002),[5] Target then pushes on by contending that events taking place before October 15, 2009 cannot be the basis for liability even as part of a hostile work environment claim (T. R. Mem. 7-8).

Not so. As to hostile work environment claims, Amtrak, 536 U.S. at 117 teaches:

> Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

To that end a court must analyze the complaint "to determine whether the [otherwise time-barred] acts about which an employee

---

[5] Brindley muddies the waters somewhat by arguing in a footnote that she mentioned claims of ongoing discrimination in her EEOC charge (B. Mem. 7 n.4). But otherwise time-barred discrete actions cannot themselves ground liability under any theory, including a continuing violation theory (Amtrak, 536 U.S. at 114-15). Instead such earlier discrete events (in this instance, those before October 15, 2009) can be considered as evidence of animus because the statute does not "bar an employee from using the prior acts as background evidence in support of a timely claim" (Amtrak, 536 U.S. at 113).

5

complains are part of the same actionable hostile work environment practice, and, if so, whether any act falls within the statutory period" (id. at 120).

Here Brindley complains that numerous subordinates, managers and other co-workers collectively created a hostile work environment and that management rebuffed her consistent complaints about that environment, thus reinforcing the hostile environment. In that light much of the pre-October-2009 conduct is part of the same actionable hostile work environment practices that serve as the basis for Brindley's complaint. And importantly, manifestations of that conduct continued to occur after that date. Examples include the denial to Brindley of mentorship and leadership opportunities that were offered to younger employees and the failure to act on her complaints about continued harassment (¶¶88-89).

Target seeks to blunt the cumulative force of all that conduct by arguing that in determining whether acts that occurred before the statutory period contributed to the same hostile environment, courts must consider only whether the acts "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" (T. R. Mem. 7)(internal citation omitted). But that position, sought to be drawn from Amtrak, lacks context. In Amtrak the Court, after having recited the broad principles quoted earlier, went on to

6

quote some language from the underlying Court of Appeals decision that it had affirmed (526 U.S. at 120-21). But in doing so, the Court clearly did not establish, as a sine qua non, that lower courts must determine whether the acts involved the same type of employment actions, occurred relatively frequently or were perpetrated by the same managers. Instead the Court of Appeals' expression was quoted only as an example of how a lower court could apply the broader standard--something that this Court has done here.

Because many of the pre-October-2009 actions about which Brindley complains are thus part of the same actionable hostile environment practices as acts that took place after that date, this Court rejects Target's motion to dismiss Brindley's claims as time-barred. In sum, that earlier conduct can serve (1) as evidence of animus needed to prove discrimination based upon events that took place after that date and (2) as substantively actionable as part of Brindley's hostile work environment claim.

### Scope of the EEOC Charge

Target also urges that many of the allegations in Brindley's Complaint are outside the scope of her EEOC charge (T. Mem. 8-10). It contends that many of Brindley's factual allegations, as well her allegations of a hostile work environment, pattern and practice discrimination and disparate impact discrimination, are beyond the pale. In response, Brindley clarifies that she

7

advances only claims of disparate treatment, retaliation and hostile work environment--not pattern-and-practice or disparate-impact discrimination (B. Mem. 6-7). As to hostile work environment, she urges (1) that theory was contained in her EEOC questionnaire and (2) that it could reasonably have stemmed from her EEOC charge in any event (id. 4-6).

Generally "the scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC" (Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)). Such a limitation "gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the court" (id.). But that statement of scope does not act as a straitjacket, for a plaintiff may also bring claims "that are like or reasonably related to the allegations of the charge and growing out of such allegations" (Swearnigen-El v. Cook County Sheriff's Dep't, 602 F.3d 852, 864 (7th Cir. 2010))(internal quotation marks omitted).

In applying that principle, our Court of Appeals has sent somewhat mixed signals as to whether and in what circumstances an assertion contained in an EEOC questionnaire may be considered as part of the charges filed with EEOC for purposes of determining whether the allegation can be pursued in federal court. Less than a year after the majority opinion in Novitsky v. Am.

8

Consulting Eng'rs, L.L.C., 196 F.3d 699, 702-03 (7th Cir. 1999) had articulated a bright-line negative answer to those questions, Vela v. Vill. of Sauk Vill., 218 F.3d 661 (7th Cir. 2000) said that "[t]here are cases where courts have looked beyond the four corners of the EEOC charge form" (id. at 664). It said that even while citing Novitsky approvingly in terms of the factual situation that had been presented there.

Two cases in the intervening decade have looked at the issue. In the first of those, Tamayo v. Blagojevich, 526 F.3d 1074, 1089 (7th Cir. 2008) quoted and applied the plain-language rule in Novitsky. But most recently Swearnigen-El, 602 F.3d at 865 quoted the broader language in Vela while citing Novitsky in "cf." terms that seemed to narrow its holding to the facts involved there.

All of this has a good deal in common with ancient soothsayers' efforts to divine the significance of entrails. But on balance this Court will adhere to the Novitsky-stated proposition, for nothing presented by Brindley establishes the type of equitable circumstances suggested by the Novitsky concurrence or used by other cases to distinguish Novitsky.[6] In

---

[6] In that respect Brindley has made no effort to discuss potentially relevant factual circumstances such as whether (1) she had a lawyer at the EEOC charge stage (Novitsky, 196 F.3d at 703)(Rovner, J., concurring) or (2) EEOC engaged in inequitable conduct (id. at 702) or (3) the questionnaire was filed contemporaneously with the charge (Marigny v. Select Speciality Hosp.-Milwaukee, Inc., No. 04-0597, 2006 WL 1589643,

9

sum, this opinion will consider the EEOC charge and not the EEOC questionnaire in determining what claims are appropriate.

On that score Brindley contends that she should be allowed to proceed with her hostile work environment claim because it is reasonably related to the allegations in her charge (B. Mem. 6). As Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001)(internal quotation marks and citations omitted, and emphasis in original) explains:

> Claims are reasonably related if there is a factual relationship between them. That means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.

Put another way, "the essential element is what EEOC investigation could reasonably be expected to grow from the original complaint" (Novitsky, 196 F.3d at 701)(internal quotation marks omitted)).

In those terms the hostile work environment claim presented here by Brindley is reasonably related to the claims in her charge. In the charge Brindley checked the "age" and "retaliation" boxes in the "discrimination based on" section (T. Mem. Ex. A). And in describing the particulars the charge stated (id.):

> I was hired by Respondent on February 13, 2007. My most recent position was Guest Service Team Lead. In or around February 2010, I was denied the opportunity

---

at *3 (E.D. Wis. June 6)) or (4) the questionnaire was signed under oath (Vela, 218 F.3d at 665).

> to apply for the position of ETL Human Resources. During my employment I have been subjected to different terms and conditions of employment, including, but not limited to, training opportunities, mentors, and wages.
>
> I believe I have been discriminated against because of my age 59, (d/o/b October 21, 1950), in violation of the Age Discrimination in Employment Act of 1967, as amended and retaliated for engaging in protected activity.

Brindley's hostile work environment claim, as already elaborated, bears a strong factual relationship to the allegations made in her charge. That claim rests on factual assertions that include the denial of important aspects of her employment, particularly training and mentorship opportunities. And it is certainly likely that in investigating those assertions EEOC would have come to understand that the claimed continual deprivations could equate to a hostile work environment claim. Finally, it is noteworthy that there is no separate box on the EEOC form for hostile work environment claims (contrast the separate box provided for retaliation claims). It would surely be reasonable (and indeed logical) for a lay plaintiff to check the general discrimination box when seeking to advance a hostile work environment claim.

Target attempts to analogize the situation to cases that hold there is no relationship between retaliation and discrimination or between discrimination and disparate impact claims (see, e.g., <u>Noreuil v. Peabody Coal Co.</u>, 96 F.3d 254, 258-59 (7th Cir. 1996)). But those cases stress (1) retaliatory

11

discrimination is effected by a particular precipitating event (some protected activity) that had not borne a causal nexus to the underlying discrimination (id. at 258) and (2) that disparate impact claims rely on a method of proving intent different from that involved in standard underlying discrimination claims (id.). To the contrary, standard disparate treatment discrimination claims and hostile work environment claims rely on the same cause and are generally proved using the same type of evidence.

Target also cites a number of district court decisions that find claims of hostile work environment to be unrelated to discrimination claims (T. Mem. 9-10). But quite apart from the fundamental proposition that district court opinions (including those by this Court, of course) are nonprecedential, the argument lacks persuasiveness on its own. Those are fact-bound decisions that find, for example, that plaintiffs' "EEOC charges contain no language remotely suggesting that they endured a hostile environment" (Flemming v. United Parcel Serv., No. 03-9391, 2004 WL 2314962, at *4 (N.D. Ill. Oct. 12)).

In sharp contrast, there is far more than such a suggestion here--the linkage is clear indeed. It is an understatement to say that Brindley's hostile work environment claim is reasonably related to the allegations contained in her EEOC charge. Hence she will be allowed to proceed on that theory.

## Conclusion

In sum, Target's motion to dismiss is denied as to Brindley's ADEA claims, but it is granted as to her IHRA claims.[7] Brindley may proceed on her federal disparate treatment, retaliation and hostile work environment claims, but she will not be allowed to proceed on her state law claims. Finally, a status hearing is set for 9 a.m. February 3, 2011, to discuss the future course of this litigation.

                                             /s/ Milton I. Shadur
                                Milton I. Shadur
                                Senior United States District Judge

Date: January 21, 2011

---

[7] T. R. Mem. 1 n.1 states that Brindley voluntarily dismissed her state law claims. That appears to be corroborated by the lack of discussion of those claims in Brindley's responsive memorandum.

13